Athena Automation Ltd. Next case is Husky Injection Molding Systems v. Athena Automation 2015, 17, 26, and 27. Mr. Cutler, good morning. Can you beat that previous argument? I'll tell you what, that's going to be tough to do. I'll be honest with you, your honor, but thank you. May it please the court, my name is Matt Cutler and I represent Husky Injection Molding Systems in this appeal. And our appeal is based on a singular issue, whether the doctrine of assign or estoppel should apply in inter-parte review proceedings. Now these types of procedural issues has been raised by the solicitor and also by Athena. Procedural issues have, so far, been considered through the lens of 314D. And of course, 314D is pending before the Supreme Court. In the Cuozo decision, arguments were heard a little over two weeks ago. And I think that part of the decision, I don't think it advances the ball here today to discuss whether those earlier decisions by the court were correctly or incorrectly decided. I think the Supreme Court is going to make that decision for us. When that happens, if the Supreme Court decides that this court can review a decision to institute, we'll be back. And the decision would be to figure out whether assign or estoppel does apply to inter-parte review proceedings, because that's something you can look at. Well, there's a more difficult question that's not answered by the way you phrased that. The more difficult question is not whether we can review decisions to institute. The statute's fairly clear on that. The statute, in effect, says we're not going to have any interlocutory appeals from decisions to institute. The more difficult question in this case is whether, on final decision, can we review a question that goes to the, if you will, the essence of the appeal or the issues in the appeal, even if that initial decision was made at the time of the decision to institute review. That's really the question. I don't think the Supreme Court's going to say, oh, yeah, you can review decisions to institute unless they are really kicked off at the Congress, in which case they'll ignore it. But I don't think any of us want to go there. So the question is, can we look at an issue of this kind when it comes up on final decision about the appeal? I agree with your answer. And what's your answer to that? I believe that the answer to that is going to be yes. I listened to the arguments of the Supreme Court. I believe that Justice Sotomayor was troubled by the way things have progressed here at the court. What do you think the answer is under the law as it currently stands, not where you think the Supreme Court is going to go? I believe that the law as it currently stands, that what was intended by Congress with Section 314D was not that anything at all at the beginning of an inter parte review can't be looked at by this court. Commentators, it was a surprise, I believe, throughout the bar that that's where this court ended up on that particular issue. And I believe that ultimately that's going, I agree, if the court is reversed on that point, I would agree with it, based on what all the information that we've set forth in our briefing. Well, surely your position can't be, or maybe it is, that we can review anything we want to on final decision, even if it was simply a question at the institute stage like, should we institute on claims 12 and 14 or just on 12? And the PTAB says, let's just do 12. And this comes up on us. And the question is, they should have instituted on 14. Can we review that? I believe that you can, for example. You can? I believe. For example, the PTAB has created a doctrine called redundancy, for example. And they will, at the decision institute level, not listen to the challenge to claim 14 because it's redundant. I believe that this court should have the opportunity to review whether redundancy is something that should be undertaken by the PTAB. What about our recent decisions where we've said that we will not review that? Well, I think all this wraps up in what's going to happen. Assuming, let's assume for a minute, setting COSO aside, under the current state of the law, are you still arguing your position here? Are you saying that under the current state of the law, under Acades and that line of cases, you agree that we don't have jurisdiction? Exactly, Your Honor. I was trying to shove that issue aside for now because I agree. Under the current state of the law, my argument is if it's viewed via the 314D lens, it doesn't have a lot of legs right now. That's why I was trying to suggest early on that COSO is going to decide that for us. Well, before you give that up so readily, my friend, I might ask you this question. Should we interpret the IPR statute and the CBM statute the same way? I think there are… Statutes are exactly, literally identical, right? Correct. We've interpreted the CBM statute to say that there are certain basic ideas that continue to be reviewable, including the question of whether there is a fundamental legal opportunity for the PTAB to have undertaken that review and come up with a final opinion. Would you think that standard ought to apply to IPRs? I do believe that, Your Honor, a versatile decision should apply to IPRs and could, and that gets to my next point. I'll answer the judge's question in that light. I guess it's part and parcel with what my next point was going to be. I believe that under the facts of this particular case, the court does have jurisdiction to look at the Sinner-Estoppel issue. Obviously, what the solicitor and what Athena has stated is that we're taking this under the 314D, Acades, and the long line of cases that have followed lens. I'm suggesting we're outside of that is what I was trying to ultimately get to. There are a couple of ways of looking at it. Certainly, the Rosada case is one of them. Also, even under the Acades case, Acades explains, and this is a decision that came out after our initial brief but before our reply brief, and we discussed this in great detail in our reply brief, that the Acades case points out that there is an exception to this non-reviewability rule. That exception is if it's an ultra-v-raised action and it's an issue of justiciability that's at issue. I think here, when you look at the Trumbull case that we cited in our reply brief, the CCPA in 1933 stated that equitable estoppel applies to patent litigation, whether it comes out of the district courts or it comes out of the patent office. The Trumbull case goes on to say that it must be accepted as the law on the subject that a Sinner-Estoppel is an issue that is part of an equitable estoppel analysis. But even assuming equitable estoppel should apply, how do you differentiate this case from the statute of limitations problem? I'm not sure if I understand the statute of limitations problem. In Chetty's case. Well, in that case, there's no CCPA case or Federal Circuit case that says that the statute of limitations should be construed a certain way. The board didn't act counter to a CCPA decision in deciding the underlying issue in a case. In this case, they did. The CCPA stated that equitable estoppel and Sinner-Estoppel is an issue in patent litigation out of the patent office. This board decided that it was not going to follow that law. That's an ultra-v-raised action. 5 U.S.C. 706 says that the scope of your review includes abuse of discretion, actions otherwise against the law, against a statutory mandate, things of that nature. Our position is that this is one of those actions. How do you deal with the situation that in Acades, as I understand it, part of the rationale for distinguishing Versada was that in Acades, in Versada, they were saying, this court was saying that in that situation, you're looking at the board's ultimate ability to determine the validity of a patent. And so for that reason, it can be reviewed. But in the situation of a time bar, like a Sinner-Estoppel, it doesn't determine the board's ultimate ability to review the patent. It's just in this particular case with this particular party. So therefore, there's no jurisdiction. I mean, that's the rationale, as I understand it, in Acades. So how do you distinguish Acades on that basis? Well, I don't view the time bar as equivalent to Sinner-Estoppel, first of all. Sinner-Estoppel is an equitable doctrine as opposed to some legal statutory interpretation. And that ethical doctrine is that it's unfair, in this case for Robert Shand, the former owner of my client's company, to sell his patent and then later come back. The equitable distinction there, I think, is important. Also, I'll point out that in the Acades case, the who was not important. It was a when. It was a time bar. It was a what and how and when. Here, we are talking about the who. We're talking about who actually gets to bring it. It was a time bar on a who, though. So it is a who.  And that was the rationale, at least. Indeed, part of the rationality was that somebody else who isn't time bar could have brought the suit in the Acades. Why couldn't somebody else bring this suit? Arguably, somebody else could bring this suit. The distinction is, however, that the board didn't even have jurisdiction. The distinction is if somebody else brought the suit, if you're right that equitable Estoppel works, it wouldn't matter who brought the suit. They'd still be Estoppel. Isn't that the distinction? Or is it? No, because only the Assignore is Estoppel. Oh, so that's not going to work. At the end of the day, Your Honor, we have a CCBA case that this court must follow, that the board must follow this court. They did not follow it in stating that Assignore-Estoppel does not apply to IPR proceedings. Let's assume we give you that. You keep going back to that. But that doesn't help us because we have to decide whether we can even decide that question. That's the jurisdiction problem. Under Acades, it is stated that the exception to the Acades rule is if there's an ultra vires action. This would be an ultra vires action if the board did not follow. Any other federal circuit decision, I don't think it would be a problem to state that it's an ultra vires action. They are required to follow your jurisprudence. If they don't, then even Acades allows you to open it up. Mr. Cutler, you wanted to save considerable time for your rebuttal. Yes, Your Honor, I will. And to deal with the cross appeal. Thank you. And so we'll move on at this point. Mr. Mattel, you're for the patent office and you're going to take two minutes. All right. Let's see how much you can jam into two minutes. Well, Your Honor, in light of counsel for Husky's concession that under the court's existing jurisprudence, this court lacks jurisdiction to review this. I hope the two minutes is excessive. The principal argument asserted seems to be based on the very last paragraph of Acades. Dirty, dirty pool. The statute says fine when not appealable. He did say it. He did say it. Yeah, go ahead. But counsel's principal argument seemed to be based on the passage in the last paragraph of Acades, which refers to the Liedem v. Kine exception. This is an exception recognized by the Supreme Court in the 50s that even a clear bar on justiciability can be overridden in cases where there's a violation of a clear statutory mandate or an egregious error. In this case, the difficulty with an attempt to apply Kline is that there's no statutory provision that codified or applied the doctrine of Asinore Stoppel. This is an argument that's based on the absence of any statutory mandate. It certainly shouldn't satisfy the test of a clear statutory mandate. That's a predicate for the application of Kine. Should we sit on this until Kozo comes down? Will Kozo cast any light on this issue, do you think? It's a matter within this court's discretion, and I'm hesitant to advise. The solicitor's office is confident in the briefs filed by the SG and the oral argument. There certainly wasn't much questioning about that issue in Kozo. There was not. We were gratified to see that. We're confident that the Supreme Court will conclude that the statutory language, final and non-appealable, means that the decision is final and cannot be appealed. Sometimes when there's just one judge or justice concerned, that can bring things out, can't it? It's been known to happen in cases. But again, I'm no better at reading tea leaves from Supreme Court oral arguments than anyone else. It's up for this court to decide whether this case should be held pending the decision here. As a final point, I would simply point out that this case is almost a textbook example for why the 314D bar is created. The patent on repellent presents no challenge at all to the Board's determinations of unpatentability. If it were to prevail in this case, there would still be in the public record a final written decision that these particular claims are unpatentable. They certainly wouldn't be canceled. And there isn't a 102 or 103 issue? No. It's hard to imagine what the patent owner would even do with this patent in that circumstance. The final written decision would basically be a cookbook for another party to bring an IPR to challenge the same claims. 314D evinces a congressional design. But that's a little speculative, isn't it? That the next board panel will decide what the earlier one did. It's possible that new evidence could be presented. But at the very least, we have a considered judgment of the Patent Trial and Appeal Board that these claims are unpatentable for these reasons. And all of the arguments are in the record. 314D evinces a congressional design that at a certain point, these preliminary questions should no longer be litigated and that the system is better served if the parties and the courts focus their attention on the final determination of patentability in these cases. Because the clear language of 314D would appear to bar this appeal pending a decision from up high to the contrary, the director respectfully requests that this court dismiss Husky's appeal. Thank you, Mr. Mattel. Mr. Schmidt, 13 minutes? Yes, Your Honor. And I would like to reserve two minutes for rebuttal. May it please the court. The board erred here as a matter of law by requiring Athena to prove something that it did not need to prove. Namely, what did the Gleisner reference mean by the pineapple and tooth ring mechanism? Athena's burden was to show that the Gleisner-Choi reference disclosed all of the elements of the challenged claims in the order recited in the claims. The board found that pineapple and tooth ring mechanism was somehow magic words and Athena needed to explain what those magic words were. Didn't you explain what they were in your petition? Yes, Your Honor, we did. We were very clear. We referred to the pineapple and tooth ring mechanism being the Choi lock that was disclosed in figure 3A. And during the argument, I said that a picture is worth a thousand words. We showed 3A and it was very clear from Mr. Link's declaration how that lock worked with the Gleisner platen to yield the claims. There's another Gleisner reference that's cited in the patent in suit, right? That is correct. And that refers to Choi and uses the very same figure that is the pineapple and tooth ring, is that right? Correct. It uses exactly the same lock that's used in Choi. And all three patents are owned by the same party. Basically, what happened here is that Gleisner said you can use the Choi lock and when you do that, you end up with the challenged claims. It is a quintessential case of anticipation by a reference that is created by the incorporation of one reference into another. Should we decide this issue or send it back to the PTO? The record is clear. As a factual matter, Mr. Link's testimony about how Choi and Gleisner operate together have been decided. There are no issues left regarding how they work together and that when they work together, they yield the challenged claims. So there's no need to remand for any factual findings. The only challenges that Husky raises are based upon claim constructions that were rejected by the Board and not appealed by Husky. When you apply the claim constructions that the Board issued using Mr. Link's declaration, it is clear that claims 2, 3, 17, and 19 are all anticipated, just like all the other ones. I'm a little bit confused by your answer because when I look at the PTAB's decision on the request for rehearing, I see that they say even if we were to consider that there was incorporation, we're not persuaded that the petitioner has met its burden to show that the combination of Gleisner and Choi teach all their set of claim limitations. And I think they do that because they're not sure what the pineapple and tooth ring mechanism is. But nonetheless, given that, isn't there still some question below about, you know, so the Board could consider it if we were determined that there were incorporation? Don't we need to remand? Your Honor, looking at what the issues were that were raised that would require Board review, those issues were all decided. The standard is that is there any reasonable fact finder that could reach a different conclusion based on the record. It's akin to a summary judgment kind of analysis. And if you look at what claim constructions were adopted by the Board and not appealed, the arguments that Husky raises in this case about movement and those arguments were specifically rejected by the Board. So there's nothing left for the Board to decide. All of the elements as set forth in the petition, explained in Mr. Link's declaration about gaps and biasing, that really has all been decided based on this record. So there is no need to send it back for that purpose. The error that the Board made was it found solely on the basis that Husky, excuse me, that Athena had not identified where the pineapple and tooth ring mechanism started and ended. But as I said, Athena did do that, but more importantly, that wasn't relevant. Because once Troy was incorporated in its entirety, and this is the second place where the Board erred as a matter of law, because in its decision on reconsideration, it again went back to what they said were the magic words, pineapple and tooth ring mechanism, and said because Athena had not explained what that was, nothing had been incorporated. But that read out of Gleisner, paragraph 49, which unequivocally stated that the Troy reference or that the references that were cited in Gleisner were incorporated by reference. Should we hold this case for closeout? Absolutely not, Your Honor. And the reason is, not only does this Board not have jurisdiction, but even if it did, we listed no more than three reasons why the appeal must fail. The first is that Husky has collaterally stopped from raising this argument. It raised this argument in two other IPRs. It was rejected in the two other IPRs. They didn't appeal that decision. They're collaterally stopped. Second, they waived the argument. They didn't renew it in their response, which means we never had an opportunity to respond to the argument. It wasn't before the Board at the time of the final written decision. But your major point is that the PTAB didn't take it, and that issue is not reviewable. That, certainly, Your Honor, is a primary reason why this Court should not do it. We also point out that the PTAB's decision is absolutely right on the merits. Mr. Cutler referred to Ultravires Act and going beyond the statute. The statute is crystal clear here. Any person other than the patent owner couldn't be any clearer. May. What's that? May. May, exactly. May. May. That doesn't mean that they have a case. That only means they may file. Correct. They may petition. What does that tell us? It tells you that they have the right to file the petition, and that grants authority to the PTAB to decide whether to review it. It provides that authority. As we made clear, the same language was used. The PTAB may say it's not reviewable. But at that point, once the petition gets filed, then 314D kicks in, right? Because at that point, then the Board has all of the power that's granted under the rest of the statute. But if they say it is reviewable and they're wrong, then what? And they're wrong? And then they make a final decision based on a wrong jurisdictional understanding. What? That question assumes that... That's the Versada case. It is a Versada case. And in the Versada case, it was clear there that the question was, was that patent at issue a CBM patent? And the statute explicitly limited the Board's jurisdiction to CBM statutes. Here, there's no such limitation. The Trumbull case has no applicability here. Number one, it was cited only in the reply brief. It wasn't cited before the... But assuming collateral estoppel applies to these IPR cases, and there's a clear case here of Asinor estoppel. There's a clear case here of Asinor estoppel. How does that differ from the problem in Versada? It's clear that they have no jurisdiction when the petitioner is barred by our law. Because Congress was very clear in granting jurisdiction very broadly about who may file the petition. It very carefully laid out what estoppels apply to these provisions that are enumerated. Well, I said, assuming Asinor estoppel applies, isn't this the same problem that we had in Versada? That is, the PTAB taking on a case that by our law, assuming Asinor estoppel applies, wouldn't it be the same problem of their taking on a case that they're not entitled to take on? I don't think so, Your Honor. It's a question of what are the limits of the board's jurisdiction over IPR cases. And there is nothing in the statute that provides that that jurisdiction is limited by a whole host of doctrines that might or might not apply to this. Congress was very careful to establish… You're not suggesting the PTAB is not subject to our law, are you? When you say our law, what do you mean? The law of this court. It is subject to the law of this court. The question, obviously, is what is that law? And let's say the law of our court happens, for argument purposes, to include Asinor estoppel. Then what? The question becomes, does Asinor estoppel apply in IPR cases? Let's assume it does, for argument's sake, just for argument's sake, so we can get back to the jurisdiction issue. Do we have jurisdiction? I think at that point you're assuming that the hypothetical is set up such that if it is part of the law of this court that Asinor estoppel applies in IPR cases, you still have the question of who gets to decide that in the first instance. That's the question I'm asking you, who gets to decide that. Right, and the statute, I think, is very clear that the PTAB gets to decide that. How about after final decision? After final decision, is that reviewable by us under Versada? Under Versada, no, because, as Versada was clear, just because it ends up in the final decision, it's decided in the final decision, does not mean that it's reviewable. There are other criteria that apply. In the Ashadi's case, it was crystal clear. The thing to remember here is that the impact of this decision goes beyond Athena. There's a public policy reason to have these patents adjudicated and decided, and that goes beyond any particular Asinor. But adjudicated and decided correctly, which is why we're here. You're not suggesting we're irrelevant to the PTAB process, are you? No, I'm not, but Congress has the power to limit your jurisdiction, and respectfully, Your Honor, we believe that it has done so in this case. And I would like to say, although I'm now apparently out of time. We will give you your rebuttal time back. Thank you very much, Your Honor. Mr. Cutler. Why isn't it clear that the PTO erred with respect to the incorporation by reference? These are all your husky. I don't mean personally or in terms of your voice, but all these patents are huskies. They were all integrated. Husky knew what it was doing. The 950 patent says the nuts can be secured by any appropriate mechanism. Described in patent 153, that's Troy, and further says all cross-reference patents are hereby incorporated. And Troy is the same as an E. So why doesn't one incorporate the other by reference? Well, the first issue, Your Honor, suggests, I'm not sure if your question is directed to a per se rule, that once those words incorporation by reference are made, that there's a per se rule that the entirety of the reference document comes into the host document. I don't think that's the case. The entire line of Federal Circuit decisions, Harari, advanced display back in 2000, all articulate tests for determining when something and how much of something is incorporated. If the case was that there's a per se rule, that the entirety comes in no matter what, as Athena suggests, those tests are superfluous. Furthermore, in the advanced display case, the court remanded to the district court to find out, because the district court in that case abrogated its duty and let the jury decide what got incorporated. And the court said, no, it's a question of law. It's something that the district court should do. In that instance, it would not have sent it back down, but for the fact that you have to decide what gets incorporated, not that the entirety comes in. So that's first of all. The second step might be, well, it does talk about this pineapple and tooth ring mechanism in Glazer, and so maybe, arguably, that part does get incorporated in. This was an issue, as your honors can see from the record, was an issue from the very beginning of the IPR, went through a decision for reconsideration. The board very carefully looked at the evidence that was provided by Athena and decided that one of the ordinary skill in the art couldn't find out what the pineapple and tooth ring mechanism is. Now, my colleague discussed and said, oh, we pointed to figure 3A, and he said that a picture is worth a thousand words. The problem with that, however, is that there's a confusion. What is the lock? He refers to figure 3A as, quote, unquote, the lock. In these devices, if you look at it, and you can look at just figure 5 of the patent issue, the lock is just the teeth. So the teeth, your honor, is what all they're saying in that section you're talking about is that the teeth are the same all the way throughout. The locks themselves are completely different. The mechanisms for how these things interact and are secured are completely different amongst the various patents. So that's my, you know, I guess there's four different ways that the board's decision should be upheld. One is that there's no per se rules I mentioned. Number two, the board very carefully considered what the pineapple and tooth ring mechanism was and decided they didn't have enough information. That's all laid out very clearly. Number three, claims 2, 3, 17, and 19 each require a bias and or a gap, and that is not disclosed as well. So even if there was incorporation, there's a missing element. So is it your view that if we conclude that there was incorporation, you think there should be a remand for the board to determine then with that understanding whether the claims are anticipated? No, your honor. The last reason why the board's decision should be upheld is because they already looked at that. In the final written decision, the board looked at whether, even if there was incorporation, they said that there's no anticipation showing. And the court cited the net money in case. And what happened here is they looked at it and they said, hey, we've got this Glazner patent over here. It's just talking about a platen, which is the metal plate. And it says, well, you can attach the tie bar nuts to the rear wall using a simple mechanism such as the pineapple and tooth ring mechanism. So that's in this one reference over here. In the other reference, you have CHOI, which has some other things. Not all the things that are in the patent, by the way. And that's clear. We laid that all out in our briefing. But what the board said in this final written decision was, you have not, Athena, met your burden of showing that the prior art. What page are you looking at? For the final written decision? Like for the specific part of the final written decision that you're relying on. Page 30 to 31, I believe. Let me just make sure. Yes. Page 30 over to the top of page 32 is where this is at. And the board said, even if we have incorporation, you have not shown us that all the elements are laid out as claimed in the claims. Because you have this stuff over here. It's very similar to the net money in case or other cases that this court has decided where in a single patent, there might be two embodiments of a particular invention.  You don't see the net money in case? No, no. I'm looking at pages 30 through 32. Is it on page 30 that you think that they say that? I just want to know specifically, because I want to make sure I understand your argument. So I want to know specifically where you're relying on. Because there's some cases discussed. 30 to 32 has a lot on it. So before you leave, if you can tell me specifically what you're relying on, that would be helpful. Okay. What I'm relying on on page 30 to 32 is the board said two things. The final decision, I want to make sure you look at the final decision. Okay, on page 830. It is 830, yes. Is it the last paragraph? Is it the first paragraph? Well, the discussion about arranging is the last paragraph on page 31. Okay. Without such explanation, the supporting evidence, we're not persuaded that they've met, the petitioners met its burden to show that the various portions of Choi and Glazer, I want you to realize, are combined in the same way as were cited in the claims, cited in the Lindemann case, and going on to cite the net money in case as well. The point is you have two different documents here that show some things, and there was no discussion of how these things come together to show the claims as they're presented. Do you see what I'm referring to? Sure. Okay. Thank you, Mr. Cutler. Mr. Schmidt has a couple of minutes of rebuttal on the cross appeal. Thank you, Your Honor. Let me pick up where Mr. Cutler left off. What he didn't point out is what the board said is, without such explanation and supporting evidence, that refers to an explanation of the pineapple and tooth ring and supporting evidence. The board's decision rested entirely upon their conclusion that Athena had failed to describe and explain the pineapple and tooth ring mechanism. And even if you accept that as true, it is not sufficient because Athena explained through the declaration of Mr. Link, in detail, how the glazen or platen, when used with the choy, and lock is a shorthand. I think what Mr. Cutler meant is the teeth are the lock member. The lock is the larger assembly, and choy refers to it as a clamping and securing system or means. But what's important, what the magic words here are, the words of the claim. And what Athena did is what the law requires, which is describe how the combined reference of glazen or choy discloses each of the elements, the lock, the complementary lock member, the systems that move together, did a finite element analysis to explain how the engagement limitations were found in the combined reference inherently. Athena carried its burden, and the board erred by making it prove something that it didn't need to prove. The law of incorporation is crystal clear. In the Liebel-Flarsheim case, the court went beyond what was specifically referred to in the text and looked at the entire reference as it is obligated to do. We submit that the decision of the board should be reversed, and the case should be remanded only to, with instructions, that the challenge claims 2, 3, 17, and 19 are unpatentable and should be canceled. Thank you very much. Thank you. Mr. Schmidt, we'll take the case on revisement.